public interest as we anticipated. Judge Walker, Judge Sack, and I are pleased to greet counsel this morning here at the Third Circuit. We look forward to your presentation. Counsel, you may proceed whenever you're ready. May it please the Court. Good morning, Your Honors. My name is Neil Levin and I represent the trustee in the Chapter 7 bankruptcy proceedings which bring us here today. I'd like to give you a very brief overview of the procedural history as to why we're here today. Actually, the law of the case is not that difficult. What got us here is a little bit convoluted. You mean law of the case in the technical sense or law of the case in the general sense of the law applicable to the case? I believe the law applicable to the case is easy to dissect. Because the law of the case in its traditional sense, in its technical sense, is one of the things that makes this a very complicated case to try to figure out what was the law of the case before Judge McCulloch passed away. If I may address that initially, Your Honor, because obviously it's top of mind. What we have to remember is one very important thing that may or may not have come out well in the briefs. The law of the case argument relative to Judge Wettick's ruling, Judge Wettick being the Chief Judge of the Court of the Commonwealth, did not apply to Mr. Arbogast, the debtor here. Because Mr. Arbogast's case had been dismissed at that period. So that's why even Judge Markovits refers to Judge Wettick's ruling in the state court as the Titus decisions. Titus was one of the other judgment debtors and remains one today as a debtor in bankruptcy as well. So the law of the case is really not an argument here at all. There was no law of the case as prescribed by Judge Wettick. Counsel for the debtor would like the law of the case to be as Judge Wettick ruled, but that's not what was adopted by Judge Wettick. I'm sorry, I didn't mean to interrupt you because I would like you to finish what you were saying since we're talking about this. Then there's the question of the law of the cases as it applied to some of the rulings of Judge McCullough, right? Yes, and this is how the debtor has characterized Judge McCullough's ruling. He said that Judge McCullough didn't want to adopt his own ruling in Minot. Judge McCullough wrote Minot. He didn't want to adopt his own ruling. He wanted to adopt Judge Wettick's ruling. That's not exactly true. What Judge McCullough said is he felt bound by Judge Wettick's ruling because it had occurred at a time when this fraudulent transfer proceeding was pending in state court. But he was wrong. The reason he was wrong is because it didn't apply for the analysis I just gave you. Are we talking about luxuries versus necessities now? We're talking about Judge Wettick's use of the word luxury, yes. Right. And that's what created all the confusion from the inception. Didn't Judge Wettick equate luxuries with expenses that were not necessary? And isn't it your position that you can have non-luxuries that are still not necessary? Yes, and I think Judge Markovitz did a very good job of distinguishing luxuries and necessities. And I believe that Judge Wettick's ruling was erroneous in his recitation of the relevant statute. Luxuries seems to me a sort of casual way of talking about it rather than it's either necessary or not necessary. It's a necessary household expense or it's not necessary, isn't it? I agree with you, actually. I agree with you. In fact, what's happening is we're sort of bastardizing this idea of luxury and necessity. Luxury is a term of art, as you know, in the bankruptcy code. We look at luxuries as far as unnecessary expenditures. But it's not applicable to this case. Correct. There is such a word as necessities in a different context, but it means something else. In the state court, fraudulent transfer statute, the Uniform Fraudulent Transfer Act, comment six, does talk about necessities. Right. And somehow Judge Wettick used the word luxuries instead. And Judge Wettick's not a bankruptcy judge. And so what's happened in the bankruptcy court context is my opponents have now taken that word luxury and run with it and are trying to use it as a bankruptcy court might use it in a completely different context. And that, Judge Markovitz said, is not right. Judge Markovitz went through all this analysis and said this is not a luxury discussion. This is a necessities discussion. And so if I can back the lens up for just a moment, fraudulent transfer claims are not complicated. They really aren't. We have overly complicated this case to the nth degree. A fraudulent transfer claim is simply this, the transfer for less than reasonably equivalent consideration. Except in the context of wages directly deposited into an entirety's account. It does get a little more complicated, doesn't it? We're talking here about a constructive fraudulent transfer. Yes. I mean, your argument that there was no fraudulent transfer to the wife is absolutely correct, but absolutely irrelevant, isn't it? No, our argument is that there was a fraudulent transfer to the wife by making the deposits into the entirety's account. We're talking about constructive now. This isn't a regular fraudulent transfer with intent to hit or delay and so forth. So that's what we're talking about. You're correct, Your Honor. There are two types of fraudulent transfers under the Act. There's the per se and then there's with intent. Per se is where we're basically talking about insolvency at the time of the transfer for less than reasonably equivalent consideration. And with intent is something entirely different. We prove intent through the ten badges of fraud to determine whether or not they were intentionally trying to shield the asset from predators. We've taken away the discussion of intent from the very beginning. Judge Markovits didn't rule on intent because it doesn't exist. It's your position, isn't it, that the fraudulent transfer occurs with the transfer into the joint account instead of his own account, but that there can be exceptions to that for reasonable and necessary household expenses. Well, exceptions is a very interesting use of words, Your Honor, because what we claim is that there's a defense of necessities. And that affirmative defense... Okay, but you start off with the concept is that it goes into the joint account. And then at that point, you do not include necessary, reasonable and necessary expenses, assuming it's raised as a defense. Yes, so we've jumped to another argument, and that is the defendant's argument relative to the... I'm sorry, with respect to our argument with respect to burden of proof. And so we'll touch on that just very briefly. Oh, no, I'm talking about what the law is. Right, and so... The way to conceptualize the law. And our position on the law is that our prime official showing of a fraudulent transfer is to show that the defendant directed his money into the entirety's account. That's the transfer. The transfer, which I believe is misconstrued by my opponent, is not payments to golf club membership. Right, and I misspoke a moment ago because I was attributing to you the argument on the other side. But this question of burden of proof seems... Well, you think they have to come in and prove the negative. We have to prove the prime official case, which is the transfer itself, the resulting insolvency, which, of course, we have a $4 million obligation. None of them have $4 million in assets, so they're insolvent. And we have to prove that it was for less than reasonably equivalent consideration. There was no consideration. There is a defense, and that defense is necessities. And that's what's referenced in this comment six to the statute. Well, the question is whether that is, in fact, a defense or whether it negates part of your cause of action. I mean, whether it's an affirmative defense or whether it's simply saying, no, it isn't. It isn't fraudulent because of... And, therefore, the question is, was it part of your case to negate it, or was it part of their case as though it were affirmative defense to prove it, right? I believe that's accurate. Yes, that is the issue before us, is if it is an affirmative defense, that was not our obligation to characterize the various expenditures that resulted from the entirety's account going into trial. This trial would look very different. And, again, back to my original position here. Well, the trial looks different or the outcome looks different? The trial is different. Well, do we care if the trial is different, if the outcome is exactly the same? No, it would not be the same outcome. We want a new trial, and here's why. We were constrained. The trustee was constrained by the evidence that the trustee could enter that trial or offer a trial. The reason we were constrained is because Judge McCullough ran with Judge Wettick's ruling.  It was interpreted by Judge McCullough that we must not bring to the court every line item of every deposit that had been transferred by the debtor into the entirety's account, for each deposit constitutes a transfer, and then show insolvency and then pass the burden to the defendant and say, but wait a second, some of the money that was transferred into that account has been used for necessary living expenses, necessities. And we should deduct that from the $1.2 million in transfers that were made into the account. That's how it should go. It's that simple. We couldn't do that. The trustee was prohibited by Judge McCullough from doing it that way. Judge McCullough said, no, you can't bring me 180 line items or pages of these deposits. I don't want to see those. All I want to see is name me the luxuries that were purchased out of that account. So Judge McCullough essentially focused not on the transfers into the account, which really are the fraudulent transfers, less whatever, and instead focused on the transfers out of the account. Which he forced us to identify. Even before who identifies it, the fact of the matter is the fraudulent transfer is when the money goes in, and Judge McCullough was focusing on what was going out instead. Is that fair to say? That is very fair to say, Your Honor. Now, at what point did you bring this to Judge Markovitz? I mean, at what point did you raise this issue? As I appraised it, at least. At what point did you raise this issue with Judge Markovitz or the district court? Well, certainly at the district court it was an issue on appeal. And the district court, if I may use the words, rubber stamped it and took Judge Markovitz's ruling on its face and said the burden is the burden as it was. But we brought it to the attention of the court at all times. We brought it to the attention of the court when we first presented all the exhibits to the judge pre-trial October 2010 and said, here are the exhibits that we want to use at trial. And he said, don't bring me these exhibits. I don't want to hear it. Here's all I want. And forced us, under an umbrella of possible sanctions for violating a discovery stipulation, to only use the exhibits relative to the five identified expenditures. That's inherently unfair. Well, you mean it's inherently against the law. I would say it's against the law. Well, it's probably why the law is written the way it was, to be fair, I would hope. What's your best authority for the idea that all you need to do is come in with bank statements and cancel checks? Eighty years of authority in the Commonwealth has supported the contention that deposits by an individual judgment debtor into an entirety's account are fraudulent transfers. Eighty years of authority. This is not a revelation. We're not asking the court to write new law. Eighty years of authority. But I thought the authority said, except to the extent they are expended on necessities. And when Judge McCullough wrote the opinion in Minun saying exactly that, he then said the burden of that showing of necessities rests squarely with the defendants. Judge McCullough wrote that. And that may or may not be correct. And I guess that's the question for us? There's no law anywhere. I don't know if that's right. I just want to understand completely your argument. You're saying that the burden of the fraudulent transfer, at least initially, which is a transfer without equivalent return or compensation, is on the trustee. And then the defense comes in that there are reasonable necessary household expenses and that that burden is on the other side. Correct. And that's your position. Rather than the entire burden of showing that they're fraudulent, that the monies that you are claiming are you have to show a negative, in effect, if you have to show the defense. That's correct, Your Honor. And if I may cite two pieces of authority on that. Borrowing from the Eleventh Circuit, I think they used the best wording in the Rawson case that we cite. Matters extraneous to plaintiff's prima ficia case. This is clearly a matter extraneous. Prima ficia cases for fraudulent transfer for millennia have suggested that all we have to show is the transfer for less than reasonably equivalent value to time when the transferor was insolvent. That's it. That's the prima ficia showing. For constructive fraudulent transfer. Yes, for constructive fraudulent transfer. That's the prima ficia showing. You're treating the deposit into the entireties as if it were an actual fraud. But the law has never called that an actual fraud. No, we're not doing that, Your Honor. It's constructive because you have to look further to see what comes out of that entireties account. And for what? Why isn't that a part of your burden? I agree with you that we have to look at that. The question is, with whose evidence are we going to view it? Well, you have right to discovery. You can take evidence from whomever and wherever you can find it. And Judge Markovitz's ruling, I think, was accurate on this. Judge Markovitz said that these are documents and information that rests squarely with the defendant. And it's extraneous to the prima ficia showing. A prima ficia case. And let's not forget, the statute says nothing about this. Only a comment addresses the idea of burden shifting and not with respect to this defense. You mean a comment in the legislative history. Comment 6, which everyone wants to focus on here, says nothing on this burden staying with the plaintiff. It says nothing about that whatsoever. In fact, the fidelity case that's cited has nothing to do with the transfer of the burden with respect to this defense of necessity. So are you concerned? Let me just ask you this. In this case, it seems to me all the facts were known to the judge. And he made the rulings he made. The evidence was out there. The other side produced facts related to the account. He had all the account information. It sounds to me like in terms of this case, the realities of this case, and Judge Davis and I, I think as former district judges, know that once you get the evidence in the case, the burden of proof is in the picture, but it's not. You know, you decide the case based upon the facts before you. Are you talking, is this really a question more for what the Third Circuit law ought to be in this area as opposed to any real or practical consequences as far as this case is concerned? No, Your Honor. What we'd like to have, and if I can run with your point, all the facts of the case are not in the case. The reason all the facts of the case are not in the case is because the trustee was constrained from putting all the facts in the case. I see. Well, as soon as you say that, of course, the other side is going to say, well, we want a continuation of the findings of damages. And I didn't think you wanted that. We think the damages analysis has been cut off the way the defendant has put it here, saying now that for the first time. Oh, are you saying there should be a, this case can't, we can't decide this case finally. It's got to go back for the pursuance of the stip before Judge McCullough? Contrary to what the defendants have done, we have asked the court to recognize that we were prohibited from bringing evidence in. There is no such prohibition on the defendants from having brought in evidence. Tell us, if we turn it back, how would the court, step here for a minute, how would the court, how would your view with the bankruptcy, I assume it goes back to the bankruptcy court, right? That would be correct. How would exactly, you know, from step to step, how would the court in your view proceed appropriately and how would that affect the result? Before I answer, your Honor, I see that my 15 minutes are up. You may have questions. Time to address some of the other issues. This will not come out of your rebuttal. There are people waiting here to argue. Thank you, your Honor. So it would go back to the trial court, and here's what the trial would look like. We would first bring in the bank statements showing every one of the deposits. It would be a long list of deposits over the course of a predetermined period, which we say starts in April of 2003 and runs through the date of the filing of the bankruptcy, which is another one of the issues on appeal, this quote-unquote look-back period, which really got run amok. So we would list all these deposits, and we would show the amount of money that was put into the entirety's account. That amount of money constitutes, at a time when the transfer was insolvent, a constructive fraudulent transfer. That's the prime officer showing. He transferred his asset into an entirety's account. Eight years of law says that's it. And that is for them to show what were necessities. Exactly. Or that the money came into the entirety's account came from another source. Correct. It's not a complicated issue. Fraudulent transfer cases. And this is what you asked Judge Markovitz to do, and he wouldn't do it. We asked Judge Markovitz. In fact, that's a very interesting point. In between the time that Judge McCullough passed and the time that Judge Markovitz convened this matter for retrial, there was a discussion as to how this was going to proceed. I believe this is in the record. We haven't been asked to specifically address it, but I will here. And Judge Markovitz was not so convinced, as Judge McCullough was, that Judge Weddick's ruling in the state court was the law of the case. And, in fact, now his ruling does address this and says flat out it's not law of the case. It was an interlocutory order. It was kind of alighting over the point. I felt we were focusing now on what it was that Judge Markovitz did that should be done differently if it was sent back and there was an effect and now a separate trial. I mean, we sort out these issues, these legal issues, and send it back, I guess, is what you're asking for. And then you can basically introduce the entire account and then just say, okay, now it's your job to the other side to show what should come out of it, and then we'll take the rest. Yes, and so we asked Judge Markovitz to retry it. Well, actually, Judge Markovitz's idea to retry the matter. You could have asked him to do what Judge Walker just said was your property, was your position. Yes, and, in fact, he said to us. Can you show us on the record where you did that? Because I'm not sure about that. I don't believe that that was an interim hearing, Your Honor, and I don't know that that actually made it into the record. Well, how are we going to take it then? I mean, you know, we've got to go on the basis of what's before us. Let's assume for purposes of argument that we don't have that in the record. We're not going to have an answer to the question. Let's assume that it was never done. Sure. So then the question is, did we ask Judge Markovitz to do something different? Judge Markovitz's ruling, I think, is instructive. Judge Markovitz's ruling recognizes that we wanted to do this because Judge Markovitz says that this sanctions motion should never have been an issue. He didn't feel, and he does say this in his memorandum of opinion, he does not feel that we should have been constrained by the ruling of Judge Wettig in the state court. And so let me ask you this. If we agree with Judge Markovitz on the period 203 to 207, and we agree that reasonable and necessary expenses are accepted, as he did, and we agree with his findings as to the country club expenditures, and we don't think that there should be a stip, and we agree that there was no real stip for a ‑‑ he wasn't bound by a stipulation that there be a separate proceeding. What is there for him to do? I mean, you basically, as I understand it, you want us to send it back so that you can introduce all the deposits into the account from 2003 to 2010. Other than that, if it's just 2003 to 2007, is this going to accomplish anything? I would say that it does, because, again, we were asked to identify the luxury expenditures, and we were only able to come up with these five categories, which you have before you, and included the golf club membership that transfers into the retirement accounts and the house in Florida. Thank you, Your Honor. So these five items were all that we were able to come up with. It shouldn't be upon us to come up with the exhaustive list of what they did with their money, because that's what we were presenting to Judge McCullough. So you want them to account for each and every expenditure that they made over these years? That's the defense. Out of that account. That's the defense. Your view is very simple, whether it's right, whether you preserve it is a different question. But your view is really, as you stare out, by saying very simple. All the money that went into that account was because it was out of your reach, because it was by the entirety. All that money was, at the beginning, was fraudulent, was constructively fraudulent. And then it's for them to come up and say, here's stuff that we spent on necessities, whatever that means, and here's the stuff in that account that didn't come from the salary that was sent in there. And then you take those two things and you subtract it from the entire amount that was transferred, because that's the fraudulent transfer. That's correct, Your Honor. If I may address Your Honor's point. The reason we don't go all the way to determine whether or not it is a fraudulent transfer, the reason we only have to stop at the deposits is this. The transfer, which I think we all agree on now, the transfer itself is the movement of the money from the possession of the judgment debtor, his wages and earnings, into the integrity account. Stop. That's the transfer. Can I ask a question about that? Was prior to a particular date in question, when you say he knew that he was insolvent, was money from his wages and earnings going into a separate sole account for him? No. In other words, was it always going into the joint account? The vast majority, if not all, yes. I see. So this isn't something where he all of a sudden woke up one day and said, I need to put this in a joint account, you know, to somehow put it out of the reach of creditors. Then we'd have an intent claim. Right. And we're not bringing an intent claim. We're bringing a constructive claim. So you're saying the mere fact of putting it in a joint account is sufficient to, under the non-intent fraud, constructive fraud count? At last count, Your Honor, seven different judges agree in these proceedings. Do we have any? Oh, in these proceedings. In these proceedings. Seven different judges agree. And you want it to be 10? We would love it to be 10. Two district court judges, four bankruptcy judges, and a state court judge have all now acknowledged that the movement of the money from the individual judge. In other cases, Titus. And in this case. And in this case. Even the district court judge agreed. And I know that we're de novo here and we're going as though under the law of the circuit, it says you don't really care what your district judge said. There were of the five areas that you're concerned about, if we did what you want us to do, everything would be open again. You'd have a chance to show that $338,000 went to her, that you'd have the Florida house, all of that would be open again. You'd have the clubs open again. You'd have the retirement open again. And you'd have the life insurance open again. Is that right? In effect, a redo of the whole thing. A redo? In a sense, you'd wipe those out and you'd say we're entitled to show what went into these accounts and maybe even to Mrs. Arbogast. And then throw the ball into their court to show that it was reasonable and necessary. That's the way it should be. That's the way these trials should all be. And unfortunately, five of them were all done under the pretense of Judge Wettick's order in the state court. And Judge McCullough had warned before he passed that with respect to all five, he was going to constrain the trustee from putting on the evidence to show exactly that. Okay. And then Judge Markovitz even acknowledged. And here's, I suppose, the idiosyncrasy of Judge Markovitz's ruling. Because he was dismissive of Judge Wettick's ruling, I feel it would have been incumbent upon Judge Markovitz to then say, well, because I disagree that Judge Wettick's ruling is the law of the case, the trustee should get a fair shot at this. Yeah. My only question now is whether you made this very plain to Judge Markovitz, that this was your position. I mean, it's obviously things get refined as you think about how to appeal. And where on the record there is some – where did he err, really? And where the fact that he was erring was brought to his attention? On this point, he didn't err, Your Honor. On this point with respect to the transfers and how we should have been able to look at the transfers. He stuck to the five points, and he focused just on those five issues, you know, and then decided them. He didn't – the way we just described it wasn't his approach. His approach wasn't saying, okay, you prove the 1.x million dollars that goes into that account, and it now is on the other side to show that they're reasonable and necessary. And that wasn't brought to his attention. I believe it was, and I think that that is evident by his ruling. I believe that what happened with Judge Markovitz was what I'm calling an inadvertent diversion. Judge Markovitz has now said, that's not the law of the case. The trustees should not be sanctioned. The trustees should have been allowed to put this stuff in. But Judge Markovitz didn't see that it would make a difference if we did put it in. And so he ran with the five categories, thinking that was the exclusive list of categories. When it's not, we won't know. Let me ask this. Is there anything wrong with the five categories? No, those five categories should definitely be included. So I think you want to amend your response to Judge Walker, because you're not asking to reopen all of that. I'm assuming that when Your Honor say reopen, that we're not throwing away all the evidence. Certainly the evidence is what we already did. No, no, no, I understand that. But I guess what Judge Davis is saying is, are you saying there's more than the five categories? You know what? And we recognize that there might be. And that works against us. That clearly works against us. There may very well be. And, again, I don't feel that anyone should be constrained. But you say it works against you. I'm not sure what you're saying. Nor am I. Because what if they raise additional defenses, where they can show that some of the $1.2 million went for more than just these five necessities. Maybe there's seven necessities. Right. But you don't want to be constrained by the monies that were spent on these items. So you would like to have, you know, you're going to start from a different premise. You're not going to start with the money that was spent on these items. You're going to start with all the money that went into the account. Correct. And we believe that even with respect to these five items, we might come out better than we did. So even if we were limited to these five items, if the defendants were limited to these five items, we know that if we started under the premise that $1.2 million is our starting point, and then we subtract the money that was spent for actual necessities. You would much, much rather start with $1.2 million. Correct. Correct. So you would recover, I guess under your theory, automatically any cash expenditure, any ATM withdrawal, you would get that automatically? No, Your Honor. Well, how would a defense, let's say you have a bank statement that shows a $300 cash withdrawal from an ATM in downtown Pittsburgh on X date 2006. Do you really think somebody could come into court under oath and testify what he or she did with those $300? That's why it's not our burden. Our burden is only to show the transcript. So your answer is yes. They're stuck. Even if the spouses made a $200,000 deposit into the account two days before, your submission is those $300 taken from that ATM, we get that. It's not out of the realm of reason to have someone come in and testify that I spend this much money on groceries per month, that I spend this much money on insurance premiums per month, that I spend this much money on clothing. $300 taken from an ATM and you've got your grandkids with you and you're buying an ice cream cone. And so if we look at it line item by line item, yes, it might be difficult, but it would not be difficult to come in with annual expenditures showing what their necessities are. That's not that difficult. We all budget. We all use QuickBooks or we use some other type of budgeting to know whether or not we're going to have money at the end of the year to pay our taxes. It's not that complicated. And when we're talking about necessities, it's even less complicated, because we don't have to know how much money went to fuel the boat. So, by the way, I assume, I haven't looked at this closely, you know how much of his wages went in there, right? Yes. And you know how much of her independent funds went in there, right? Yes. Is that the 1.2? Is that net to? No. Let's call it net, yes. What's the net of that? Let's call it 1.2 net. 1.2. His wages. And so you want as much of that 1.2 as they can't prove were necessities. Precisely. Yes. Can I just go over the five items? It started off with transfers into Mrs. Arbogast's sole account. And I think the bankruptcy court there thought that it was just as likely as not that that money came not from him, directly from her. And then as far as the retirement account was concerned, that never went into the joint account. That just came right from the employer. Some, yes. There were two categories of that. But, yes, some went right from the employer. Yes. But it didn't go into the joint account. None of the monies went to the joint account before it went to the retirement account. I believe that's correct. Okay. And then the life insurance policy was for fair and adequate return to him. In other words, he bought the life insurance policies. That's not fraudulent. Correct. Okay. I believe that's what Judge Marcus said. Okay. So that leaves you with, and those rulings would presumably stand, right? I believe that's correct. Okay. Then that leaves the clubs in Florida of the five that are at issue. Under the theory, unless we throw out the whole thing and make everybody come back, you're basically saying that if there's a retrial of this whole case based upon your theory, then these other various rulings would still be applicable. I believe that's correct. On individual items. Those are legal arguments that we're not challenging. And my only real question is, can you establish that you challenged the approach of the burden in the way you have today? We believe that Judge Markowitz's ruling memorializes our position on it. Okay. And does that set forth, can you show me there and where that is in the, maybe in a rebuttal when you get back up, where that is in his opinion? I will look that up. Okay. Now, may I speak briefly to this look back period? Well, you should hold that for rebuttal. Okay. In rebuttal, we also are going to be addressing the cross-appeal issues as well. Of course. Thank you very much. Mr. Kralik, we'll be glad to hear from you, sir. Did I pronounce that correctly? Yes, you did, Your Honor. Thank you very much. It's uncommon for it to be pronounced correctly, but it is. Good morning, Your Honors. I'm Nicholas Kralik. And I represent, in the Court of Law, I represented Thomas Arbogast, the debtor. For the purpose of this argument, I've been designated as arguing counsel for both Thomas Arbogast and his wife, Mary Claire Arbogast. Listening to counsel's arguments, Your Honors, a lot of it may apply if this was all in a vacuum. And I've got to deal with this in terms of the background. Obviously, the predecessor to the trustee, Trizic, which was a commercial landlord of a partnership in which Mr. Arbogast was a member, had filed suit and obtained a judgment in court of common pleas. I think, as the record will show, there are arguments, there are comments made, that there had been extensive post-judgment asset discovery to determine what happened with the cash, the payments, the salary of Mr. Arbogast. And there's numerous references in the record about dozens of banker's box filled with thousands of documents going back over a decade as part of the asset discovery process in state court to provide the information to Trizic, the commercial landlord. So, this is not a situation where the information regarding the transfers of the income, the wages, was squarely or solely within the possession of the debtor. The creditor had that information and obviously shared it with the trustee. Fast forward to the bankruptcy filing of Mr. Arbogast, and then fast forward to the removal of the state court fraudulent transfer case, which is where this action began, to the bankruptcy court for trial before Judge McCullough. The initial response filed by Mr. Arbogast to the fraudulent transfer complaint was a motion for a more definite statement. And what we asked was, tell us out of all of these documents and everything that we've provided to you, you can look at them, tell us what you claim to be the fraudulent transfers, so that we can go on and put in evidence to rebut what you're contending to be the fraudulent transfers. Wasn't the fraudulent transfer the transfer in that had already been accomplished, rather than these various transfers out? Well, the transfers out would categorize them as whether or not the initial transfers were fraudulent, because if they were used, and this is where we get into the luxuries and necessities argument, but if they're used for necessities, they're not fraudulent. Well, you were about to say that you asked, that the judge asked the trustee to say what was fraudulent. And if the judge did that, and the trustee responded to these five categories, then I assume that your argument would be those are the parameters of this case. The judge didn't, in a vacuum, tell the trustee, you cannot allege these various transfers as fraudulent. What happened was, in response to our motion for a more definite statement, the parties entered into a stipulation for a case management order. That's in the record. In consideration of the trustee identifying at a later time, in the pretrial statement, the specific categories of the transfers she claimed to be fraudulent, we withdrew our motion for a more definite statement as moot and filed an answer on the merits. That led to the April 20th, I believe, 2010 consent case management order, where the agreement of the parties between the trial counsel, which the trial counsel was Mr. Vedick, not Mr. Levin, whereby the parties' agreement was set forth, and in that consent case management order was a statement that said, the trustee is to identify those specific transfers which she claims to be fraudulent and those exemptions to which she continues to maintain an exemption. And does the record tell us that she basically changed her mind about that? Is that what happened here? Because I think what you just said is clearly in the record. It is. It seems to have been an agreement that the trustee would come forward with a list of what they said, what she contended, were not necessities. Correct. That was our understanding. That was the way it appeared in the consent case management order. That's the way it appeared. Specific transfers. But then later she came back and said, here, take this 189 page or whatever it was list, and you sought sanctions on the basis of that. And to go that route, Your Honor, would have involved going through, as I mentioned earlier, the thousands of pages of documents, credit card receipts, ATM withdrawals, checks. Was she entitled to change her mind? Not when she went into a consent case management order. And the second thing that's also clearly in the record was an evidentiary stipulation on the first day of trial, October 14, 2010, at the outset, where the discussion was held, a colloquy between Ms. Zarbagast, the attorney in the court below, Mr. McDonough, and Judge McCullough, where it was identified that this is what we have decided to do, counsel for the trustee and us, to expedite and to make this a more efficient process of going through the trial. Rather than going through the tens of thousands, the trustee would introduce his or her exhibits, identifying their evidence in support of the claims of fraudulent transfer. They would have their offer of proof. And then the Zarbagast would go on and take a stand and try to defend the exemptions and defend the transfers as not fraudulent. This would help me. Sure. Your answer to this, I think, would help me. Imagine counterfactually, not this case, but imagine that over four or five years, his wages went into the entirety of the account and never came out. Nothing ever came out. Not even for necessity? Not for anything. Do we have a fraudulent transfer? I would submit that you do not, because they were not used to purchase either, and let's forget about the argument, either luxuries or non-necessities. But what do you say, he's hidden his wages, hidden, in quotes. He's put his wages. She clearly has no interest, no protectable interest in his wages from the firm. And he's basically just put his wages in a form that the creditor can't reach. Is your hypothetical that only his wages are put into that? Other funds as well. It's in the entirety of his account. Then to the extent that Mrs. Arbogast put in her separate assets, her separate money, then arguably he's received reasonably equivalent value, and that's one of the elements of a fraudulent transfer claim. You transfer property. What is the reasonably equivalent value received by him by virtue of the spouse's deposits? Her separate assets. She contributed to the marital estate. Okay, but leave those aside, because that's not what we're talking about. We're talking about his wages. That's the issue here, right? Right. So the question that Judge Davis asked was the simple fact of putting those into the entirety of his account, you say is not a fraudulent transfer. And yet Judge Markowitz, as I understand it, said it was. And then the question comes up, were expenditures reasonable and necessary for household expenses? And then those will not be counted, but the rest will be. And the Arbogast put on testimony with regard to what they used the money for, and they also testify there's also some testimony, although not a great deal of testimony, about the extent of Mrs. Arbogast's contributions to the marital estate from her separate assets and separate funds. That goes to the question of reasonably equivalent value. He put in his wages into the joint account. She also put in her separate assets. So to the extent that Mrs. Arbogast put in her separate assets, there's a couple of cases and related cases in the bankruptcy court in this matter from some of the other partners, that there is a corresponding reduction in the amount of the claimed fraudulent transfer based on funds coming from other sources. Right. All right. That's understood. Okay. So from the standpoint of, you know, in the abstract. We could forget those in terms of the analysis that we have to think about. They have no bearing on this case, right? Well, due respect, Your Honor, Mrs. Arbogast's contributions do have bearing on this case. Well, only on the output from the disbursements. Your argument that it's not a fraudulent transfer unless she didn't contribute, I'm not getting that at all. It's the constructive nature of him receiving wages in a nanosecond and then transferring immediately into the entirety of his account. That's the fraudulent transfer. Right. Right? That is the fraudulent transfer, but to the extent he gets a reasonably equivalent value for his transfer by Mrs. Arbogast. Which has nothing to do with what she puts in, except to the extent you can prove that she put something in that covered some. Put it this way. When she puts money into the account, there's no fraud involved. That's correct. It's her money going into the joint account. Right. And she doesn't have any creditors. It's his creditors that are important. It's the law firm. You work for the law firm. So that just confuses the issues to raise that, it seems to me. Because I don't see how it has any bearing at all. Simple, simple. What my colleagues are saying sounds so simple to me. I don't know what problem you have with it. It is that the fraudulent transfer was the money that was paid by the law firm into their joint account, period. And then you take out necessaries. But the fraudulent transfer itself, the universe of it, is the money that was put in. And then the question is, how much is it? You can call it for value. You can call it necessities. The question is then, how much do you reduce that amount by because of what it was spent on? But you start with only what was given, paid by the law firm to him and then through him to the account. What I was driving at, Your Honor, is that it is also reduced by the extent to which the non-debtor spouse contributed her separate assets and her separate funds. That's not even in consideration because that's not fraudulent. It's not fraudulent, but it's to show that there was reasonably equivalent consideration, reasonably equivalent value to Mr. Arbogast because she contributed to the marital estate, and that's why it's relevant in this case because there was a stipulation that the parties entered into to allow for just that type of evidence to go in after it was determined. Everybody agrees, I think. It doesn't matter how you map it. I think everybody agrees that if she put money in, that the trustee doesn't get that money because she's not the debtor and she was not at her payments and we're not fraudulent transfers. She's not the debtor. It's not a fraudulent transfer. What my point is is that it goes to reasonably equivalent value received by Mr. Arbogast for his deposit into the… Why is that? I mean, what does it have to do with value to him for his deposit? Because that's an element of a fraudulent transfer. I know that's an element of a fraudulent transfer, but how is it valued to him as an individual to have done that? I mean, it's unrelated to his transfer, it seems to me. He puts money into the joint account, removes it from the creditors. She isn't doing anything. She's just contributing to that account. And you could have 10 other people contributing to that account, too, and that'd be fine, too, if they felt like it. But the real thing we're focusing on is what his contribution was into that account and whether or not he got value back with that money that he put into the account, not in terms of anything that anybody else put into the account, but was it for reasonable and necessary expenses or was it for a purchase of a car, which he got, which was then part of the bankruptcy estate or something of that sort? It's valued to the extent that the funds that Mrs. Arbogast contributed to the marital estate were used to satisfy Mr. Arbogast's obligations. That's the value he received. He wasn't the only one putting his wages into the account. Right, but you're going to cut those. Is this an argument to try and get more money for the Florida house or reduce the Florida house value or something? I mean, she did put money into the Florida house. It did not come out of a joint account, right? No, the acquisition of the Florida house, Your Honor, came from a withdrawal from an exempt pension account, plus another $5,000 from the joint account, which Judge Markowitz said, well, to the extent of the $5,000 that came from the joint account, that's a fraudulent transfer. But that erroneously presumed that none of Mrs. Arbogast's separate assets went into that account. I think I finally get your point. Not that I agree with it, but I think I get it. Is it your argument that he puts in $100, she puts in $100, and they expend $150 to pay the light bill? Your argument seems to be that he gets credit for the first $100 to his light bill. Is that your argument? She only gets credit for the 50 of the $150 light bill. Well, you'd have to change that analysis to a non-necessity or a luxury. A light bill is a necessity. Everybody agrees that. So it wouldn't be a fraudulent transfer in any event because it's a necessity. But we're not focused on the payment of the light bill as a transfer, fraudulent or not. We're focused, at least in the first instance, on what goes into the account. And what I think we've been trying to get you to address in a way that we finally understand it, is why it matters what she put in. Because to the extent that her funds were used to pay that obligation, and, yes, that's the benefit to him, that dollar amount. How could we possibly know whose funds? The funds are fungible. Well, that was one of the issues that we raised in our appeal, in the sense that we didn't get the opportunity to show that. That's in our cross-appeal. As far as the pretrial evidentiary stipulation is how the parties were going to proceed. We're going to proceed to identify, number one, what those fraudulent transfers were, which the trustee ultimately did after much effort. Then once the court made the ruling, if the court found that there were no fraudulent transfers, then the dollar amounts wouldn't matter because there would be no fraudulent transfers. What the stipulation called for, which was entered into in the first day of trial, is to the extent that the court did find that there were fraudulent transfers, then the parties, number one, would attempt to agree as to the amounts that would be applicable to those findings, the dollar amounts, or that a supplementary rule. So are you willing to actually have a trial on all 189 pages? I don't think we need to have a trial on all 189 pages. Except for the five categories. Is that what you – do you think you're going to come out better if you do it line by line? No, we did that, Your Honor, as part of case management. As part of making this case proceed in a judicially efficient and economical way. Judge McCullough didn't want to go through thousands and thousands of pages of documents with a three-month trial involved. That's why the parties entered into the consent case management order saying, trustee, identify these areas. And yet both parties are here complaining about not having been able to vindicate what they thought they were bargaining for in that case management order. That's what I just heard you say. We weren't permitted to do that. Well, the stipulation that I'm referring to was not in the case management order, but it was on the record in front of Judge McCullough. Based on the case management order. Based on the case management order. That's correct. You know, the appeal that was filed, the claim against Mr. Arbogast was, as Your Honor pointed out, over 1.2 million or several million. And the case came out with $143,000 judgment against the Arbogast, which the trustee appealed. You didn't want to be here. I understand. We filed a cross-appeal based on the issues we raised that we thought had merit, and that included the evidentiary stipulation, which allowed us, which would have allowed us to introduce evidence of Mrs. Arbogast's contribution, not just for the acquisition of a couple of the assets. You know, the Florida house wasn't anything from her money, as I mentioned earlier. There was one item, one of the club memberships. There was evidence that for the acquisition of that, you know, some of her money was paid the initiation dues. Let me get it. Let me get it. Okay. Well, finish your thought. But the claims that the trustee was pursuing also was the continued support and expenses and maintenance of the Florida home and the continued expenditures on the club memberships and how Mr. Arbogast used those club memberships. And there was no evidence and no effort, no opportunity to provide evidence as terms of how much of Mrs. Arbogast's separate assets were included and used in that, in the payments of those expenses. And that's what we complained of in our cross-appeal, that the trial evidentiary stipulation was not given effect, and Judge Markovitz essentially ignored it. Notwithstanding the fact that at the second hearing on April 27th, at the outset, trial counsel for the trustee, and this is also in the record as well, said it's our understanding that the April 27th rehearing, which was occurred as a result of Judge McCullough's death, was not to replace the record of the October hearings, but to supplement it. And using Mr. Vedek's words, he said, because there were stipulations, plural. Okay. Let me ask you this. So going back to the look-back period, the judge decided that the look-back period was the four years prior to the state court action, 2003 to 2007, right? That's correct. And is it your position that that was correct? Yes, Your Honor. The other side says it wasn't. And I take it that your reason for that is that that was, in effect, what the parties discussed before Judge McCullough. Right. And also, I take it, I think there's a general rule that the parties are supposed to, when they go into bankruptcy, are really standing in the shoes of the prior creditor, and under state law, those four years would have been the correct period of time. You mean the trustee is standing in the shoes? Trustee is standing in the shoes. Of the creditor, yes, that's correct. Okay. I just want to be clear on that. Yes. This, Your Honor, I think we've pretty well covered what I want to address with regard to Mr. Levin's argument. And following up on the stipulation or the agreement regarding the four years, that was not in a vacuum either, because we had a situation where the Trizicon, through its Pittsburgh counsel, had, after the bankruptcy had been filed, had written a letter to Judge Wettick, and this is also on the record as well, asking for a striking of the discontinuance without prejudice and reinstatement of the action against Mr. Arbogast. Because, as you recall from the record, Mr. Arbogast had been excluded from the state court litigation as a result of a superior court decision, absolving him of liability, which the Pennsylvania Supreme Court reversed. The problem we had was that the Trizicon had asked Judge Wettick to reinstate that and in violation of the automatic state. Because it occurred, it was entered February 3rd, 2010. That's all clear. How did that prejudice you? Well, we had a concern that there was a violation of the automatic state, but I'm not saying it prejudiced us. I'm not saying it prejudiced us. I'm saying it was a factor in the consideration of entering into the stipulation as to the four-year lookback period. You make an argument in your brief that the country club expenditures were for his benefit alone and therefore not fraudulent. I don't understand that argument. It seems to me that the real question here is whether those expenditures were for non-necessary items and that a club membership is not necessary, regardless of who benefits. I also cite a case in my brief identifying what constitutes a transfer for the benefit of a third party. It's a Blue Coil Energy case. It's in my SIR reply brief, Kellogg versus Blue Coil Energy. Right, but we're talking here about whether the expenditures were for reasonable and necessary household expenses or not, and a club is not for reasonable and necessary household expenses, even if it's for his benefit. It's a luxury or non-luxury, but it's not reasonable, not a necessary. But Mrs. Arbogast was not a transferee of that. No, but the transfer occurred under the theory that the judge operator left. The transfer occurred when it went into the joint account, not when it went to the club. But she derived no benefit from it and she was not. So the point is and the reasoning is... If she's going gambling to Las Vegas for a week and she wasn't involved at all, that would be the same issue. It would all be for his benefit, and I suppose then you'd have to argue, oh, well, somehow since that was for his benefit, it was a reasonable and necessary household expense to go to Las Vegas. So then the reasoning is to impose a liability on Mrs. Arbogast simply because her name was on the account. She was not a transferee. She derived no benefit from it, and therefore she has liability. I think the reasoning there runs afoul of what the blue quail... So you think that the expenditure has to be for... the non-necessary expenditure has to be for the benefit of her as well as him. That's her position, Your Honor. I see. So that if he did take the money out of the joint account and go to Las Vegas for a week and blow it all to the tune of $100,000, since she didn't get any benefit of that, that wouldn't count either. He could very well have cashed his check at a bank, taken $100,000, put the rest of it in the joint account, and then go off to Las Vegas and blow the account. Does that make Mrs. Arbogast liable? That's the same rationale. It's just a question of whether it's a fraudulent transfer or not and whether it was for a reasonable and necessary household expenses. I don't know that her liability cuts in the picture. You're talking about a different... You're saying that would be fair, but where's the fraudulent transfer? You're saying what difference does it make? The outcome is the same, but the difference is that if it was accomplished one way, it's treated one way, and if it's accomplished by transfer first to a joint account, then it's treated as everyone. Well, yeah, so under my scenario, it would not be a fraudulent transfer because Mr. Arbogast kept $100,000 out, but if he allowed it to be deposited into a joint account and then immediately took the $100,000 and spent it on himself and not for Mrs. Arbogast, then that imposes a liability on Mrs. Arbogast simply because she is a joint tenant of the account. I think that that reasoning is flawed from the standpoint of what we have here. Well, except that maybe he's doing something to her, and maybe it's not so much a creditor's worry. Anyway, I see that my time is up now. Could you take just 30 more seconds and give me your best shot on burden of proof? Burden of proof, Your Honor, we agree with the finding that Judge Markovitz had with regard to his looking at Comment 6 of Section 5102 of the Uniform Fraudulent Transfer Act. That is the party asserting that the transfer being fraudulent has the burden of proving that it is. Having said that, the Arbogasts undertook that burden on their own anyway. They're the only ones that put it on a testimony. I understand that, but why doesn't Comment 6 cover the situation of the funds going into the entirety? And as I understand the argument on the other side, it's actually silent on the actual burden of proof as to expenditures. It is silent on the actual burden of proof, but the Fidelity Bond case adopts it and says, no, this is the comment that provides that the burden of proof is on the party. So Fidelity Bond is your best? Yes. Well, if you talk about the burden of production, I take it your view is that it was more than met. There was a burden of production. That is, you had to turn over all these papers and you start out your argument by saying there was a ton of that stuff. So the burden of production was yours. That's correct. And you met it, right? That's correct. And Judge Markovitz said that he would impose upon the Arbogast the burden of going forward with some production of evidence. And Mr. and Mrs. Arbogast, the only ones who testified at trial, with very little cross-examination of Mr. Vedica. Then once you have done that, then the question, where's the burden of proof? And I think as Judge Walker suggested before, I'm not sure how much, once the production is made, once everybody has the same access to all of this material, I'm not sure how much it matters who has the burden of proof. And it really doesn't matter in this instance, because the Arbogast undertook it and we believe we met it. Well, it does matter if we accept the trustee's theory because he would wipe out everything that's happened. And go through 7,000 pages of documents. And go through 7,000 pages, and they would prove all the money that went into the account, saying that's the fraudulent transfer, and then say you show us what was necessary and reasonable expenditure out of that and put the burden on you for that. That's where it matters. And as a matter of... You ought to rule that way. And as a matter of... And you pay with a debit card, and they say you want some extra, so you take 40 bucks to put in your pocket. Your client would have to take the stand under oath and explain what happened to that 40 bucks. And as a matter of case management, that's precisely why the parties entered into that joint stipulation for case management order. That's why they entered into the stipulations in front of Judge McCullough, to avoid the waste of judicial resources going through that process, and to streamline the case, and we submit that it worked properly. Thank you, Your Honor. Anything further? That's that? Thank you, Mr. Crump. A little rebuttal, I guess. Yes, we've got rebuttal. Now, let's make no qualms about it. The stipulation was not entered into because we didn't want to bother the court.  because of Judge Weddick's ruling. And Judge McCullough's belief that that ruling was precedent in the case. That's why the stipulation was entered into. The trustee didn't volunteer. So where does that help you? It was a stipulation. It was agreed to. It was signed off on. I don't care what the prior basis was and whether it was correct, incorrect, or whatever. If you didn't like what he was doing, you wouldn't sign the stipulation. But you did sign the stipulation. What Judge Weddick has said, and we have to read the entire colloquy, he said that he was stipulating to the fact that the presumption was the record created today would be supplement of the record from October 14 and 15 with the understanding that everything that occurred prior to that point, prior to the trial, remains a matter of record because there were stipulations. He's acknowledging the fact that Judge McCullough was still working under the pretense that Judge Weddick's ruling governed the case. And here's how Judge Markovitz addressed that. Because the court agrees with the trustee in TRIZIC that a certain portion of the applicable law that must be used to resolve the incident matter was indeed misstated by such predecessor judges. And since the confusion that ensued as a result of such misstatement has not been cleared up until now by the rendering of the incident opinion, the court cannot see fit to monetarily sanction the trustee in TRIZIC for trying to put that evidence into the record. Did you sign a stipulation at that point as referred to by your adversary or enter into a stipulation? The stipulation was not a consent to the law. The stipulation was just simply an acknowledgement of the law of the case as Judge McCullough was ruling upon it. Judge McCullough had already indicated at that point that he intended... To the extent that the stipulation laid out what was to happen at trial in terms of the proof, that was a stipulation that you entered into. If you didn't like it, you didn't have to enter into the stipulation. Oh, it was required at that point by Judge McCullough... So you agreed with the interpretations that were going on. Never agreed with the interpretation. Did you reserve? Did you take out an exception? The stipulation does not anywhere suggest that we agreed with the interpretation. Does it indicate that you didn't agree? It does not. Okay. But it is not an acknowledgement of the interpretation of the law. And Judge Markovich recognized that too, that there was confusion over the fact that there was some belief by Judge McCullough that Judge Wettich's ruling governed. That put the trustee at an unfair disadvantage. And at that point, what was the trustee supposed to do? Go before Judge McCullough and say, I don't care what you think. Here's what we have. And so we in fact tried something almost to that point. And the trustee put before Judge McCullough, and let's be clear on what this is that he put before Judge McCullough. It's actually 189 pages, not 7,000. What we put before Judge McCullough was not just the deposits, but the disbursements. So you're right. The documents were there. We didn't get to use them. The discovery was there for everyone to use. We didn't get to. We didn't get to even try and satisfy our burden that we show what happened to the money after it went into the entirety's account. Wouldn't you, as you say, you weren't looking to please the court. Why didn't you just come in with your 189 pages? Why did you even create the five categories? We did. We did. And Judge McCullough... But why did you create the five categories? That was the extent of what Judge McCullough wanted to see. But you're now arguing to us, as I understand it, you didn't care what Judge McCullough wanted to see. You wanted Judge McCullough to see 189 pages. And we presented those to him, and he kicked them out. Right. And you could have appealed. You could have appealed at that point. We are. But you didn't. The judge bludgeoned you into the way he wanted to do the case, and you agreed to do that. End of story. I'm sorry. I don't think we had a right to appeal at that point in time. The trial hadn't even begun. No, no. You could have offered how trials go. The plaintiff offers their case. The defendant offers their case. There's a judgment. And then there's an appeal if you don't like what happened. And that could have happened here without a stipulation. Judge, we're not going to enter into a stipulation. Our right is to offer everything that came out, everything that went into that account, and rest. That's what we're going to do. I'm sorry, overruled, he orders all sorts of different things. And then you appeal. Which is exactly what happened. Yeah, but you entered into a stipulation. That was way before we tried to offer that. Way before. Way before. He entered into the stipulation. Your Honor, we offered that. Could you address Judge Walker's, I'm missing something. Because you don't seem to be responsive to his point. No, Your Honor. Maybe there's some confusion in the timeline. The stipulation was entered into back when counsel says he brought his motion for more definitive statement relative to the complaint. That was months before trial. Yes. Right. On the day before, day of, or right around the trial date, all the exhibit books were presented to Judge McCullough. And it had everything. In the context of the prior stipulation. No. No. We gave him everything. I see. You said, sorry, Judge, the prior stipulation doesn't apply. We're now retrying this case the way we want to try it. We believe that those documents were necessary to prove the case. And to your point, Your Honor, we tried to do it. He refused us. We're here appealing. And Judge Markovitz acknowledges that. But that's exactly what happened. Okay. We entered into stipulation way back when. We realized with all the documents and our burden that we don't have enough. We have to put the rest in because this is the way a fraudulent transfer case should be tried. And Judge McCullough sent us on our way with that. Earlier, I characterized that as a change of mind by the trustee. Would you accept that? No. You wouldn't accept that? No, Your Honor. Your Honor, it's consistent with the idea that all along, this is the way we felt a fraudulent transfer case needed to be tried. But why did you create the five categories? What you just said, it seems to me, is quite inconsistent with the idea of creating five categories and litigating and arguing before the court those five categories. It just seems to me it's not exactly an election of remedy, certainly not that. But if your position is we rest on the 189 pages, and now it's their burden, debtor's burden, to come in and show that some portion of this $1.2 million that went into this entirety's account are not subject to recoupment by the trustee, it seems to me that's what you should have done. But you didn't do that. You can't try half a case the way the judges interpreted the stipulation and put documents in so that you can come to an appellate court and say, well, we never really wanted to do five categories in the first place. He made us do it. I'm not getting that. No, you're right, Your Honor. He made us do it. Those five categories were not our creation. But a court can't make anybody introduce evidence, and a court can't make anybody enter into stipulation. The five categories were the only ones that we identified at the date of stipulation where we knew, based on the information that we had, that we were dealing with an issue of necessities. The judge treated that as an acquiescence in his interpretation of the stipulation. No, he didn't. That's not in the record anywhere. Judge McCullough never acknowledged that. Talking about Judge Markowitz. Judge Markowitz acknowledged that. That's the disorder we're looking at. I really should know the answer to this, but why was the entire Third Circuit recused? Is that because of the identity of one of the debtors? Former partners. One of the partners was Judge Hardiman. He was not liable based on the timing of the lease. He had left the firm at point X, and so he was not one of the defendants. He was, however, named in a subsequent case. Because there's also somebody whose name is very much like Sikorica, which spelled a little differently, and I've been trying to sort that out more than I should. Thank you. Right. It was not because of Judge Sikorica. If I may, just a last point here. 30 seconds. If the $100,000 was in an individual bank account, and he went off to Las Vegas, he'd never get on a plane. Because if it was in an individual bank account, we'd have the account. That's the point. He chose not to put it in an individual account. He chose to put it in an entirety's account. That changes the nature. We can't execute upon that, because it's held by tenancy of the entirety. We can't own the bank account. That's why we're bringing this up. We were talking about the money that went into the – this was in the context of his argument that somehow her putting money into the account lowers their burden, because there's a return of value to him. Anyway, we'll deal with that. Great. Next time on the Second Circuit we have a difficult case, we'll have to include one of our colleagues as a defendant. Exactly. Thank you. We'll ask the – He was not a – I'm sorry to interrupt, Your Honor, keeping with the tradition in the Fourth Circuit, which other circuits find great difficulties, but we'll come down and greet counsel. Thank you. Why don't you lead the way? Thank you. It goes back to 1927. Good to be here. Pleasure to meet you. Thank you. Pleasure, Your Honor. Pleasure, Your Honor. Thank you. Thank you. Always a pleasure. Thank you, Your Honor. Thank you. All right. Thanks very much. Good luck to you, Your Honor. We report to the Second Circuit that the tradition will not go to school. Thank you.